## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **FARMERS GROUP, INC., FARMERS INSURANCE EXCHANGE, TRUCK INSURANCE EXCHANGE, FIRE INSURANCE EXCHANGE, MID-CENTURY INSURANCE COMPANY, FARMERS NEW WORLD LIFE INSURANCE COMPANY, MID-CENTURY INSURANCE COMPANY OF TEXAS, TEXAS FARMERS INSURANCE COMPANY, FARMERS TEXAS COUNTY MUTUAL INSURANCE COMPANY, FOREMOST INSURANCE COMPANY GRAND RAPIDS, MICHIGAN, FOREMOST COUNTY MUTUAL INSURANCE COMPANY, and FOREMOST LLOYDS OF TEXAS ,** | § § § § § § § § § § § § § § § § § | |
| **Plaintiffs,** | § § | **Civil action no. _____** |
| **v.** | § § § | |
| **JOSEPH QIU and MAGNUM CHOICE INSURANCE AGENCY, INC. a/k/a JOSEPH QIU INSURANCE AGENCY,** | § § § § | |
| **Defendants.** | § § | |

## <u>COMPLAINT</u>

Plaintiffs Farmers Group, Inc. (FGI), Farmers Insurance Exchange, Truck Insurance Exchange, Fire Insurance Exchange, Mid-Century Insurance Company, Farmers New World Life Insurance Company, Mid-Century Insurance Company of Texas, Texas Farmers Insurance Company, Farmers Texas County Mutual Insurance Company, Foremost Insurance Company Grand Rapids, Michigan, Foremost County Mutual Insurance Company, and Foremost Lloyds of Texas (collectively Plaintiffs or, when used with respect to the non-FGI Plaintiffs, Farmers) file

their Complaint against Defendants Joseph Qiu and Magnum Choice Insurance Agency, Inc. a/k/a Joseph Qiu Insurance Agency (Magnum Choice), and allege:

## I.  PRELIMINARY STATEMENT

Farmers sells insurance in Texas. Qiu used to be Farmers agent; Magnum Choice is his agency. As a Farmers agent, Qiu (1) had access to proprietary and trade secret information developed by Farmers to assist its agents in the sale of insurance, and (2) agreed that if he were terminated, he would neither solicit Farmers' policyholders for a one-year period nor ever use Farmers' proprietary and trade secret information to Farmers' detriment. While he was a Farmers agent, but not thereafter, Qiu was permitted to use FGI's registered service marks in the conduct of his Farmers agency.

A little more than a year ago, Farmers notified Qiu that it would be terminating his agency because of underwriting violations. After learning of his impending termination, Qiu accessed Farmers' computer system without authorization and took its proprietary policyholder information.

Now—apparently believing that the passage of the one-year nonsolicit period insulates them from responsibility—Qiu and Magnum Choice are using that pilfered data to line their pockets at Plaintiffs' expense. Worse still, they are using deceptive and misleading tactics to that end: confusing policyholders about their affiliation with Farmers, using bait-and-switch and other misleading sales pitches, misrepresenting Farmers' coverage to customers, and abusing FGI's service marks.

Qiu and Magnum Choice's conduct has been malicious and cavalier. And their conduct won't soon stop—prior written demands to that end have gone, and continue to go, unheeded.

## II. **PARTIES**

1.      **Plaintiffs:**

(a)      Farmers Group, Inc. is a corporation organized and existing under the laws of the State of Nevada with its principal place of business in Los Angeles, California.

(b)      Farmers Insurance Exchange is a reciprocal or interinsurance exchange formed under the laws of the State of California, with a license to do the business of insurance in the State of Texas.

(c)      Truck Insurance Exchange is a reciprocal or interinsurance exchange formed under the laws of the State of California, with a license to do the business of insurance in the State of Texas.

(d)      Fire Insurance Exchange is a reciprocal or interinsurance exchange formed under the laws of the State of California, with a license to do the business of insurance in the State of Texas.

(e)      Mid-Century Insurance Company is a stock company formed under the laws of the State of California, with a license to do the business of insurance in the State of Texas.

(f)      Farmers New World Life Insurance Company is a life insurance company formed under the laws of the State of Washington, with a license to do the business of insurance in the State of Texas.

(g)      Mid-Century Insurance Company of Texas is a Texas domestic stock company, with a license to do the business of insurance in the State of Texas.

(h)      Texas Farmers Insurance Company is a Texas domestic stock company, with a license to do the business of insurance in the State of Texas.

(i)     Farmers Texas County Mutual Insurance Company is a county mutual insurance company formed under the laws of the State of Texas, with a license to do the business of insurance in the State of Texas.

(j)     Foremost Insurance Company Grand Rapids, Michigan is a foreign corporation formed under the laws of the State of Michigan, with a license to do the business of insurance in the State of Texas.

(k)     Foremost County Mutual Insurance Company is a county mutual insurance company formed under the laws of the State of Texas, with a license to do the business of insurance in the State of Texas.

(l)     Foremost Lloyds of Texas is a Lloyds company formed under the laws of the State of Texas, with a license to do the business of insurance in the State of Texas.

2.     **Defendants:**

(a)     Joseph Qiu is an individual citizen of the State of Texas, and resides in Collin County. He is the founder, registered agent, and president of Magnum Choice.

(b)     Magnum Choice Insurance Agency, Inc. is a Texas corporation that can be served through its registered agent, Joseph Qiu, at 5016 Tennyson Parkway, Plano, Texas 75204.

### III. <u>JURISDICTION AND VENUE</u>

3.     The Court has jurisdiction over the claims asserted under the Lanham Act, 15 U.S.C. § 1125, the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and under 28 U.S.C. §§ 1331, 1338.

4.     The Court has supplemental jurisdiction over the state law claims because they are so related to Plaintiffs' other claims that they form part of the same case or controversy. 28 U.S.C. §1367(a).

5.      This Court has personal jurisdiction over Qiu because he is a citizen of the State of Texas and regularly conducts business in Texas.

6.      This Court has personal jurisdiction over Magnum Choice because it is a Texas corporation and regularly conducts business in Texas.

7.      Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. § 1391 because Defendants are subject to personal jurisdiction in the Northern District of Texas and a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred within this district and division. Magnum Choice, of which Qiu serves as president, expressly represents on its website that it does business in Dallas.

## IV.  **BACKGROUND**[1]

A.      **Farmers sells insurance in Texas and, to that end, provides extensive training, resources, and support to its agents.**

8.      Farmers is in the business of selling insurance policies, including automobile, homeowners, commercial and life insurance, to customers in Texas through independent contractors—such as Qiu—who are appointed to act as exclusive Farmers agents. The market for these types of insurance is highly competitive. Farmers' most valuable assets are its relationships with its customers (*i.e.*, policyholders) and its customer information (including the customer's names, premium amounts, type of insurance, and renewal dates for their policies). The information, if made known to or used by Farmers' competitors, would give them a significant competitive advantage over Farmers. Farmers has made and continues to make significant

---

[1] Allegations that Qiu committed an act and/or omission mean that: (1) Qiu himself, or Qiu acting by and through his agents, employees, and/or representatives, committed that act and/or omission; and (2) the act and/or omission was committed with full authorization and/or ratification of Qiu or was done in the normal and routine course and scope of the agency or employment. Allegations that Magnum Choice committed an act and/or omission mean that: (1) Magnum Choice itself, or Magnum Choice acting by and through its agents, employees, and/or representatives, committed that act and/or omission; and (2) the act and/or omission was committed with full authorization and/or ratification of Magnum Choice or was done in the normal and routine course and scope of the agency or employment.

investments in building its insurance business, reputation, and customer relationships through its exclusive agency force, which it pays commissions and supports with training, customer service, advertising, promotions, and other initiatives.

9.      Farmers has made, and currently makes, substantial investments in advertising and promoting its brand, as well as its customers and claims service, called "HelpPoint," to customers. Farmers has spent millions of dollars on advertising campaigns on a national level. Farmers also works with local cooperatives to advertise Farmers' insurance agents and products on a local level. Farmers pays 50% of the costs of local marketing in conjunction with the cooperatives. Farmers also promotes its exclusive agents through its website. Potential customers can find local Farmers agents by typing in their city or zip code.

10.     FGI owns, among other Farmers-related trademarks, the terms "Farmers Insurance," Registration Number 4806240, and "Farmers®," Registration Number 1899192, as well as the following logo:



Registration Number 5027439. The remaining Plaintiffs are authorized to use the logo and mark.

11.     Farmers agents can take online courses or attend classes at the University of Farmers at a nominal cost. Farmers offers its agents courses designed to teach them to market their agencies and develop their sales techniques to maximize their sales of Farmers' insurance products. Agents also receive additional training from Farmers' local district offices, district managers, and territory personnel.

12.     Farmers provides financial support to its exclusive agents to help them develop and grow Farmers' insurance business. Some new agents may be eligible for subsidized loans to carry them financially as they begin to develop business. These loans are forgiven if the insurance agent meets certain target production numbers. Agents are also able to obtain loans from the Farmers Insurance Group Federal Credit Union to meet their operating expenses.

13.     Farmers provides its agents with the tools they need to succeed. Farmers agents are provided access to the Sales Insight Management Solution (SIMS), as well as Farmers' Electronic Management System (eCMS), a proprietary web-based database of trade-secret customer information and policy expirations. SIMS and eCMS allow agents to participate in dozens of marketing campaigns, which Farmers agents can select to promote and sell Farmers' insurance business. For example, Farmers agents can use eCMS to send automatically birthday cards to the Farmers customers they service at the touch of a button. Farmers agents can use eCMS to send targeted marketing materials to customers who have existing Farmers' automobile insurance policies to promote the sale of Farmers' homeowners' policies and/or life insurance policies. Cross-selling additional insurance products is a highly effective way for Farmers agents to increase their sales and commissions.

**B.     Farmers invested substantial time and resources into developing eCMS, which provides Farmers agents a unique competitive advantage in the marketplace.**

14.     Farmers developed eCMS—which is managed by FGI—through a significant investment of time, labor, and capital. eCMS contains information about current and former policyholders. While certain limited contact information might be publicly available for some Farmers' insureds—such as a published home telephone number and residential address—most of the information compiled and maintained by Farmers is not publicly available, and is instead available only to Farmers' exclusive agents and a limited number of Farmers' employees. For

example, there are no publicly available lists of Farmers' insureds, together with their addresses, telephone numbers and policy periods. In addition, eCMS contains information related to Farmers' customers' insurance needs, such as the type of insurance that an individual customer needs; the type of vehicles owned; detailed information on their homes and other insured properties; their eligibility for discounts; and the dates on which their insurance policies expire. eCMS also includes information on individual policyholders' past claims history; premium amounts; expiration dates of policies; and other financial information. These types of information are not publicly available or, even to the extent some of this information may be purchased from lead referral sources, are not available in this format or to this degree.

15.     Farmers derives substantial economic value from preserving its confidential customer information, including their policy expirations, as a trade secret. Competitors can far more easily solicit Farmers' insureds to change insurance providers if those competitors can unfairly access Farmers' trade secret information. Competitors could use that trade secret customer information to try to solicit Farmers' customers without having to make the investment of time, labor, and capital that Farmers and its exclusive agency force have already made to compile and maintain the information in the first place.

16.     Plaintiffs engage in reasonable measures to preserve their trade secret customer information by preventing the information from reaching competitors or other outside third parties. Farmers maintains its customer information, including policy expirations, on a password and user-id protected system. As part of that system, Plaintiffs provide an eCMS "view" that is unique to each Farmers agent and inaccessible by other Farmers agents. An agent can create user-ids for his or her staff but is directly responsible for ensuring that the agent's staff members comply with Farmers' policies and procedures. The eCMS view enables the agent, and his or her authorized

8

staff, to access customer information only for those Farmers customers that the individual agent services on Farmers' behalf. At the time of termination of an agent's appointment agreement, the eCMS access of that agent and his or her staff is turned off and their user-id/password combinations are no longer valid.

17.     Farmers protects its customer information by requiring each employee or agent who will access its data to agree to use Farmers' trade secret customer information only in the course of their employment or agency relationship with Farmers, and to promise not to divulge Farmers' trade secret customer information to third parties or use it in any way detrimental to Farmers.

18.     Farmers also protects its customer information by issuing company policies about access to and preservation of confidential customer information, and by maintaining copies of those policies on the Agency Dashboard. These policies include the "Farmers Agency Force Electronic Communications Policy" and the "Policy Statement – Access to and Confidentiality of Farmers Network Information Systems." Each time Farmers agents access Farmers' proprietary system through the Agency Dashboard, they agree to abide by an additional and separate "Farmers Login Legal Disclaimer" affirming that the information they are accessing is the "proprietary, confidential and trade secret information of Farmers" and that both the information and access to Farmers' system are only "intended for use in connection with legitimate business purposes related to your Farmers agency and Farmers, and are not intended to be used for other purposes (including personal purposes)."

19.     Farmers further protects its customer information through its operative contract with agents, such as an Agent Appointment Agreement (AAA).[2] Under the AAA, addressed in

---

[2] Attached as Exhibit A.

greater detail below, agents agree to protect Farmers' confidential and proprietary information and return that information to Farmers upon termination of the AAA.

20.     Finally, Farmers' agency operations manual references the agent's obligations under the AAA. The manual also contains the "AIMS Policy Statement – Access to and Confidentiality of Farmers Network Information Systems," which confirms that "[p]olicyholder information is the most valuable asset of [Farmers]" such that "the accuracy, security, integrity and confidentiality" of Farmers' systems and the information contained therein "be protected at all times." This policy statement further advises agents that, as an authorized user, each agent is responsible for "[a]ll access to the Systems by their employees or contractors."

**C.     Qiu was a Farmers agent but Farmers terminated its relationship with him in May 2017.**

21.     In October of 2005, Qiu became a reserve Farmers agent, and became a full-time agent in early 2006, each time pursuant to a written AAA.  In the spring of 2013, Qiu signed a new AAA, which remained in effect until the termination of his Farmers agency.

22.     Under the AAA, Qiu agreed to these terms and conditions:

**B.     Agent's Duties.**

1.  To sell, solicit, and service insurance for the Companies[3] and to submit to the Companies every request or application for insurance for the classes and lines underwritten by the Companies and eligible in accordance with their published rules and manuals. All business acceptable to the Companies and written by the Agent will be placed with the Companies. If business is not acceptable to the Companies, Agent shall place such business through Kraft Lake Insurance Agency, Inc. (hereinafter, "Kraft Lake"), if eligible for placement through Kraft Lake. Only business that is not acceptable to the Companies and not eligible for placement through Kraft Lake may be placed outside the Companies.

2.  To provide the facilities necessary to furnish professional insurance services to all policyholders of the Companies including, but not limited to,

---

[3] The AAA refers to five insurers by name as well as "their subsidiaries and affiliated insurers which, during the term hereof, file a notice of Agent's appointment with the State of [Texas] . . . ." Aside from FGI, each Plaintiff is one of the Companies as defined within the AAA.

collecting and promptly remitting monies due the Companies . . . and servicing all policyholders of the Companies in such a manner as to advance the interests of the policyholders, potential policyholders, Agent, other agents of the Companies and the Companies. . . . The business conducted by Agent is referred to in this Agreement as the "Agency."

\* \* \*

7. To conduct business in accordance with the published policies, rules and manuals of the Companies in effect at the time of the appointment and modified from time to time by the Companies. . . .

8. To comply with all post-termination obligations set forth in paragraph J.

**J.      Post-Termination Obligations.**

Agent agrees:

\* \* \*

3. At the request of the Companies, to execute an assignment of any and all interests obtained incidental to this Agreement, including, without limitation, any interest in the telephone or facsimile numbers, domain names, websites, and e-mail addresses used in connection with the Agency and/or any leased or rented office location at which the Agency operated; [and]

4. For a period of one year following the effective date of termination of this Agreement, to neither directly nor indirectly solicit, accept, or service the insurance business of any policyholder of record in the Agency as of the effective date of termination or, at any time otherwise, use confidential information and/or trade secrets following the effective date of termination for any purpose not related to Agent's duties under this Agreement. . . .

**K.      Return of Confidential Information.** Agent acknowledges that all manuals, lists and other policy or customer information of any kind (including information pertaining to policyholders and expirations and the expirations themselves) contain trade secret and confidential information of the Companies, and are, and shall, after termination of the Agreement, remain the property of the Companies. Agent agrees such information will not be used or divulged, directly or indirectly, in any way detrimental to the Companies and will be returned immediately, along with any copies, to the Companies upon termination of this Agreement. Agent agrees not to retain the information described in this paragraph, in any form, following termination of this Agreement . . . .

**L.      Independent Contractor.** Nothing contained herein is intended or may be construed to create the relationship of employer and employee between the Companies and Agent or between the Companies and anyone working in the Agency. At all times, Agent is responsible for the acts and omissions of Agency personnel. Agent is an independent contractor for all purposes . . . .

Agent shall, as an independent contractor, exercise sole right to determine the time and manner in which Agent's duties and other objectives of the Companies are met, provided only that Agent conform to normal good business practice, and to all local, state and federal laws governing the conduct of the Companies and their Agents.

23.     As set forth in the AAA's plain language, Qiu and Farmers agreed that some obligations would survive the termination of Qiu's agency.[4] For example, Paragraph J.3 required Qiu to assign the telephone number that had been used in his Farmers agency to Farmers. Paragraph J.4 imposed a one-year obligation not to directly or indirectly solicit, accept, or service the insurance business of any policyholder of record in Qiu's Farmers agency as of the effective date of the termination. Paragraph J.4 further specified that Qiu could never use Farmers' confidential information or trade secrets for any purpose unrelated to Qiu's duties under the AAA.

24.     Farmers terminated Qiu's agency effective May 15, 2017, with three months' notice because of underwriting issues in Qiu's agency. At the time of termination, Qiu and his agency had over 11,000 policies in force. Following the termination of his Farmers agency, Qiu no longer had any authority to use protected marks or logos of the Plaintiffs.

25.     After the termination of his Farmers agency, Qiu started a company: Magnum Choice Insurance Agency, Inc. Qiu is Magnum Choice's president. Magnum Choice is in the same location at Qiu's previous Farmers agency, and employs several of the same staff.

**D.     Qiu accessed Farmers' proprietary eCMS system and policyholder data without authorization.**

26.     In February 2017 during the notice period of his termination, Qiu and his agency staff began mining Farmers' eCMS and confidential policyholder information for unauthorized use. That access was unauthorized because, as shown below, the information was used—and is being used—for Qiu and Magnum Choice's personal gain and to Farmers' detriment.

---

[4] Qiu also had ongoing common-law obligations to Farmers based on his status as a fiduciary.

27.     The eCMS activity from February to May 2017—between when Qiu received notice of termination and was terminated—was significantly higher than activity in previous months. Without limitation, the reports run through eCMS by Qiu and/or his agency staff during these three months included "Book of Business Reports" and "All Accounts Reports." Additionally, during the same three-month period, Qiu and/or his agency staff printed over 12,000 customer records.

28.     The Book of Business Report download contains, among other things, for each policy in the agent's agent code: the policyholder name(s), mailing address, email address, telephone number, and account type. Qiu and/or his agency staff downloaded the Book of Business report once on February 15, 2017, three times on February 16, 2017, and twice on May 8, 2017.

29.     The All Accounts Report will reflect all customer accounts which meet criteria specified by the user who is running the report. An "account" could include more than one policy or person. For example, a husband and wife might have four policies: auto, life, motorcycle and home. The All Accounts Report would reflect, for example, the account type, account status and contact name. During February and May 2017, Qiu and/or his agency staff ran an All Accounts Report for all policies (*i.e.*, all lines of business, including active, inactive, and prospective policyholders). Printable lists were also produced.

30.     The activity by Qiu and/or his agency staff in from February to May 2017 was extremely atypical.

**E.     Qiu used—and is using—deceptive and misleading tactics to poach Farmers' policyholders identified in the customer data that Qiu misappropriated from Farmers.**

31.     Following Qiu's termination from Farmers, Qiu and Magnum choice started using Farmers' confidential policyholder information—including contact information, renewal dates, and other policy details—to target, solicit, and send quotes for competing insurance to Farmers'

policyholders, and to re-write their coverage with other insurance carriers. Upon information and belief, Qiu and Magnum Choice are still doing so today.

32.     Qiu and Magnum Choice use many deceptive and misleading tactics to solicit Farmers' policyholders, including, but not limited to: (1) misrepresenting that they are still affiliated with Farmers; (2) offering to "renew" a policy with Farmers then switching coverage to a different carrier; (3) sending policyholders pre-filled applications for different carriers; (4) misrepresenting the nature, extent, or price of Farmers' coverage; (5) accusing Farmers of placing unnecessary excess coverage to get more money from policyholders and (6) bait-and-switch gambits in which Qiu and/or Magnum Choice discuss confidential details of Farmers' coverage before pressuring policyholders to switch to different carriers.

33.     Qiu and/or Magnum Choice also confuse policyholders and consumers by continuing to use FGI's logo and marks, and misrepresenting a continued affiliation with Farmers on social media. Magnum Choice's official Yelp page, for example, includes this prominent display:



34.     Qiu and/or Magnum Choice likewise maintain a Facebook page for "Joseph Qiu Farmers Agency" that has not been updated since Qiu's agency with Farmers was terminated.

35.     Qiu and/or Magnum Choice also place advertisements in Dallas-area foreign-language newspapers, newsletters, and circulars that feature the Farmers logo and mark.



36.    Qiu and/or Magnum Choice further confuse policyholders and consumers by soliciting from telephone numbers that falsely register as originating with Farmers Insurance and/or Farmers on caller-id:

| Timestamp | Contact | Length | Call Result |
| --- | --- | --- | --- |
| Today 9:49 AM | ● Insuran Farmers (972) 781-0214 | 00:59 | Reached |
| Today 10:59 AM | ● Insuran Farmers (972) 801-6827 | 02:29 | Reached |

37.    Qiu and/or Magnum Choice also call Farmers while impersonating policyholders to try to obtain policy information or cancel existing policies. For example, a representative of Qiu and/or Magnum Choice called Farmers last month impersonating a policyholder to review account information. The policyholder denies making the call or causing it to be made. In another instance,

a caller impersonating a policyholder asked for policy information to be sent to a sham email address that, on information and belief, is affiliated with Qiu and/or Magnum Choice.

38.     Qiu and Magnum Choice's conduct has injured Plaintiffs' reputation and relationship with their customers as many existing customers have cancelled their policies of insurance, often submitting proof of replacement insurance that lists Magnum Choice as agent.[5]

39.     Farmers sent Qiu a letter reminding Qiu of his obligations under paragraphs J and K of the AAA in February of 2017, and later sent another letter demanding that he cease and desist from violating his obligations under the AAA in March of 2018. Despite the demand, however, Farmers has continued to lose policyholders to Qiu and Magnum Choice.

## V.  CAUSES OF ACTION

### Count I – By Plaintiffs Against Qiu and Magnum
### Choice for Violation of the Computer Fraud and Abuse Act

40.     Plaintiffs incorporate by reference the allegations of all proceeding paragraphs as if fully set forth herein.

41.     Plaintiffs' computer systems to which Qiu and Magnum Choice gained access, including eCMS, constitute computers under the CFAA because they store electronic data, and are protected computers under the CFAA because they are connected to the internet and used in interstate or foreign commerce or communication.

42.     Defendants intentionally accessed Plaintiffs' computer systems. This access was either unauthorized or exceeded authorization because it was intended to alter, obtain and/or use information from Plaintiffs' protected computers—namely, policyholder information, trade secrets, and other confidential information belonging to Farmers—in competition with Farmers.

---

[5] Because the documentation contains personal identifying information of the policyholders, copies are not being filed with the Complaint but will be available for *in camera* or sealed inspection as part of Plaintiffs' request for injunctive relief.

43.     Defendants' unauthorized access has caused Farmers to lose many policies, which upon information and belief alone exceed the $5,000 threshold requirement. Plaintiffs have also been forced to spend expend significant internal resources as well as external resources, including hiring Jackson Walker L.L.P. to represent it in this action. That investigation and response is ongoing, and items of substantial expense—such as forensic analysis of Defendants' computers— have yet to occur. Thus, Plaintiffs will lose more than $5,000 in a one year period.

44.     Plaintiffs have suffered and will continue to suffer harm and loss, and have sustained damages including the cost of responding to Defendants' conduct, lost revenue and profits, lost goodwill, and other consequential damages in amounts to be determined at trial, which are ongoing and unabated at the time of filing this Complaint.

45.     Plaintiffs are entitled to injunctive relief under 18 U.S.C. § 1030(g) to prevent Defendants from further access to or use of information and data from Farmers' protected computers.

## Count II – By Plaintiffs Against Qiu and Magnum
## Choice for Unfair Competition in Violation of the Lanham Act

46.     Plaintiffs incorporate by reference the allegations of all proceeding paragraphs as if fully set forth herein.

47.     Farmers competes against Defendants for the same pool of customers. To gain an advantage in that competition, Defendants have resorted to unfair and misleading tactics to target and solicit Farmers' policyholders and the public, and to sell competing insurance products.

48.     More specifically, Defendants misrepresent themselves to Farmers' policyholders and the public as agents or affiliates of Farmers; misappropriate, abuse, and infringe FGI's trademarks, including the Farmers logo; use false sales pitches such as offering to "renew" Farmers

policies with competing products; mischaracterize the price, nature, and extent of Farmers' coverage; and accuse Farmers of writing excessive policies to get more money from policyholders.

49.     These false and misleading statements and conduct have confused, and are likely to keep confusing, policyholders and the public at large about Defendants' affiliation with Plaintiffs.

50.     Plaintiffs have been and will continue to be damaged as a result of Defendants' misstatements and deceptive conduct, by the abuse of FGI's service marks, by the confusion of the market for Farmers' goods and services, by the disruption of Farmers' relationships with its policyholders, by the diversion of Farmers' policyholders to Defendants, and by the damage to Farmers' goodwill and reputation as a reliable insurance provider.

51.     Plaintiffs are entitled to injunctive relief under 15 U.S.C. § 1116(a) to prevent Qiu and Magnum Choice from further violating 15 U.S.C. § 1125(a). Qiu and Magnum Choice are likely to continue to engage in such practices unless the Court enjoins them.

52.     Plaintiffs are entitled to compensatory damages and Defendants' profits, as well as attorneys' fees and costs, pursuant to 15 U.S.C. § 1117(a). The Court should also exercise its discretion to treble those damages to compensate Plaintiffs fully for their losses and deter Qiu and Magnum Choice from more conduct of this sort.

### Count III – By Farmers Against Qiu for Breach of Contract

53.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

54.     The AAA between Qiu and Farmers is an enforceable contract. Before Qiu's material breaches of the AAA, Farmers performed under the AAA. Upon Qiu's material breaches of the AAA, however, Farmers was excused and is excused from further performance under the AAA, and Farmers seeks a declaration to that effect.

55.     Qiu's acts as described above constitute material breaches of the AAA. More particularly, after the termination of his AAA, Qiu solicited, accepted, and serviced the business of Farmers' insureds in violation of the AAA, placing that business through Magnum Choice. On information and belief, Qiu also improperly downloaded and later retained Farmers' confidential policyholder information to facilitate rewriting those policyholders with competing carriers, again operating through Magnum Choice.

56.     As a direct and proximate result of Qiu's material breaches of the AAA, Farmers has suffered damages.

57.     As a result of Qiu's material breaches of the AAA, Farmers had to retain the services of Jackson Walker L.L.P. to represent it in this cause. Farmers may recover its reasonable attorney's fees and costs under Chapter 38 of the Texas Civil Practices and Remedies Code.

### Count IV – By Farmers Against Qiu for Breach of Fiduciary Duty

58.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

59.     During the pendency of the AAA, Qiu owed Farmers fiduciary duties, including (1) the duties of utmost good faith, honest and loyalty; (2) the duties to maintain the confidences of Farmers and to fairly disclose information to Farmers; and (3) the duty not to place Qiu's self-interest ahead of Farmers' interests.

60.     Qiu breached his fiduciary duties to Farmers by re-writing Farmers' customers through Magnum Choice. Qiu breached his fiduciary duties by accessing and retaining Farmers' confidential policyholder information for an improper purpose and to the detriment of Farmers: to facilitate Qiu's solicitation and sale of competing policies to Farmers' policyholders, which itself violated his obligations under the AAA.

20

61.     As a direct result of Qiu's breaches of fiduciary duty, Farmers has suffered damages, including, without limitation, lost business, policyholders, goodwill and profits, for which it seeks monetary damages.

62.     As a direct result of Qiu's breaches of fiduciary duty, Qiu has unjustly received and retained compensation paid to him as commissions by other insurance companies. As an agent, Qiu is entitled to no compensation for conduct that breached his fiduciary duties, and Farmers seeks the forfeiture and disgorgement of any such compensation—whether paid by it to Qiu or to Qiu by outside carriers—as a form of equitable relief.

63.     Qiu's breaches of his fiduciary duties were intentional, willful, and malicious warranting the imposition of exemplary damages.

**Count V – By Farmers Against Qiu and Magnum
Choice for Tortious Interference with Existing Contract Against**

64.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

65.     Farmers had valid contracts with its policyholders.

66.     Qiu and Magnum Choice knew or had reason to know of Farmers' contracts with its policyholders and Farmers' interest in those contracts because Qiu, Magnum Choice's president, was a Farmers agent and the policies at issue were sole and/or serviced by him in his prior role as a Farmers agent.

67.     Qiu and Magnum Choice willfully and intentionally interfered with Farmers' contracts by causing policy cancellations through deceptive and misleading conduct and tactics (as described previously).

68.     Qiu and Magnum Choice's interference proximately caused injury to Farmers, which has resulted in the loss of over 50 policies to date.

69.     Farmers is entitled to exemplary damages under Texas Civil Practices and Remedies Code § 41.003(a) because its injury resulted from Qiu and Magnum Choice's malice or actual fraud. As set forth above, Qiu and Magnum Choice have repeatedly misrepresented their affiliation with Farmers, as well as characteristics of its goods and services, to deceive and poach policyholders.

### Count VI – By Farmers Against Qiu and Magnum Choice for Tortious Interference with Prospective Relations

70.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

71.     Farmers had ongoing business relationships with its policyholders.

72.     Qiu and Magnum Choice knew of Farmer's business relationship with its policyholders because Qiu, Magnum Choice's president, was a Farmers agent and many of the policies at issue were sold and/or serviced by him in his prior role as a Farmers agent.

73.     Qiu and Magnum Choice's solicitations and misrepresentations were independently tortious and unlawful—regardless of the effect those actions had on Farmers' business relationship—because they violated the Computer Fraud and Abuse and Lanham Acts, involved the use of misappropriated trade secrets, and violated Qiu's fiduciary duties.

74.     Farmers suffered actual damage because Qiu and Magnum Choice's interference prevented Farmers from continuing its business relationship with its policyholders.

75.     Qiu and Magnum Choice's interference proximately caused injury to Farmers, which has resulted in the loss of at least 50 policies in the past three months.

76.     Farmers' injury resulted from Qiu and Magnum Choice's gross negligence, malice, or actual fraud, which entitles Farmers to exemplary damages under Texas Civil Practices and Remedies Code § 41.003(a). Qiu and Magnum Choice intentionally misrepresented their affiliation

with Farmers, as well as characteristics of its goods and services, to deceive and poach policyholders.

**Count VII – By Farmers Against Qiu and
Magnum Choice for Misappropriation of Trade Secrets**

77.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

78.     Farmers' policyholder information comprises a trade secret under Texas Uniform Trade Secrets Act (TUTSA). Farmers' policyholder information is a compilation of information about Farmers' customers that would not be readily ascertainable by proper means, including, without limitation, their identities, their contact information, their present and past insurance coverages, the expiration dates for such coverages, and premium information (the Proprietary Information). The Proprietary Information derives independent economic value from not being generally known to, and not being readily ascertainable by, other persons who could obtain an economic advantage from its disclosure or use. Qiu and Magnum Choice's actions here confirm that the information has value. If the information did not have independent economic value or could be readily ascertained by other proper means, then there would have been no reason for Qiu to extract it from eCMS for his and Magnum Choice's own later competitive use.

79.     By downloading Farmers' Proprietary Information for an improper purpose and retaining it without Farmers' consent after it was required to be returned by the AAA, Qiu misappropriated Farmers' trade secrets under the TUTSA. Magnum Choice had notice that Qiu appropriated the Proprietary Information through improper means because Qiu is its president.

80.     Qiu and Magnum Choice then used Farmers' Proprietary Information for an improper means: to solicit, service, or sell to certain Farmers' policyholders, both during and after the one-year period Qiu was forbidden from doing so by his AAA. That conduct is a further

23

misappropriation under the TUTSA. The timing and frequency of Qiu and Magnum Choice's conduct show that the conduct is willful and malicious.

81.     The Proprietary Information is, and at all relevant times has been, the subject of Farmers' reasonable efforts under the circumstances to maintain its secrecy. Qiu's AAA includes a provision protecting this information from disclosure:

> Agent acknowledges that all manuals, lists and other policy or customer information of any kind (including information pertaining to policyholders and expirations and the expirations themselves) contain trade secret and confidential information of the Companies, and are, and shall, after termination of the Agreement, remain the property of the Companies. Agent agrees such information will not be used or divulged, directly or indirectly, in any way detrimental to the Companies and will be returned immediately, along with any copies, to the Companies upon termination of this Agreement. Agent agrees not to retain the information described in this paragraph, in any form, following termination of this Agreement . . . .

82.     This information is maintained on a password and user-id protected system and access is granted only to individual agents and their authorized staff. Farmers also issues company policies on access to and preservation of confidential customer information.

83.     As a result of Defendants' conduct, Farmers has suffered actual loss in the form of lost goodwill and lost policyholders, and has also incurred attorneys' fees.

84.     Farmers' injuries resulted from Defendants' willful and malicious misappropriation of Farmers' trade secrets, which entitles Farmers to exemplary damages and recovery of reasonable attorneys' fees. Tex. Civ. Prac. & Rem. Code §§ 134A.004(b), .005. Qiu and/or his agents intentionally took Farmers' Proprietary Information, Information to which they knew they were not entitled and had agreed not to use. Now Qiu and Magnum Choice—of which Qiu is president and that shares the same staff and location as Qiu's former Farmers agency—are unfairly using that Proprietary Information in direct competition with Farmers.

**Count VIII – By Farmers Against Qiu and Magnum Choice for Unjust Enrichment**

85.     Farmers incorporates by reference the allegations of all preceding paragraphs as if fully set forth herein.

86.     Defendants' above-described wrongful acts, including the misappropriation of Farmers' trade secrets, directly or indirectly soliciting, accepting and servicing insurance business of individuals and businesses in violation of his AAA, self-dealing, and usurping business opportunities that rightfully belong to Farmers, resulted in the unjust enrichment of Defendants. In particular, Defendants received these benefits and undue advantages: (1) Farmers' confidential information; (2) increased business advantage; and (3) commissions from other carriers for placing Farmers' insureds with competing carriers.

87.     Because of the wrongdoing involved in obtaining these benefits and the undue advantage taken, Defendants hold the proceeds, funds, and property obtained in constructive trust and should be ordered to forfeit and disgorge the same.

## VI.  <u>PRAYER</u>

Plaintiffs ask that the Court enter judgment against Defendants on all counts, and award them: actual damages resulting from Defendants' conduct, exemplary damages as permitted by law, pre- and post-judgment interest as provided by law, reasonable and necessary attorney's fees and costs of court, imposition of a constructive trust, disgorgement and/or forfeiture of amounts improperly obtained by Defendants, equitable and injunctive relief, declaratory relief, and such other and further relief to which they may be entitled either at law or in equity.

Respectfully submitted,

**JACKSON WALKER L.L.P.**


By:  */s/ Marilyn Brown*
Marilyn Brown
State Bar No. 24046460
Email:  mbrown@jw.com
100 Congress Avenue, Suite 1100
Austin, Texas 78701
(512) 236-2379
(512) 391-2181 – Fax

**and**

Jamison M. Joiner
State Bar No. 24093775
Email:  jjoiner@jw.com
2323 Ross Avenue, Suite 600
Dallas, Texas 75201
(214) 953-5951
(214) 661-6811 – Fax


**ATTORNEYS FOR PLAINTIFFS
FARMERS GROUP, INC., FARMERS
INSURANCE EXCHANGE, TRUCK
INSURANCE EXCHANGE, FIRE
INSURANCE EXCHANGE, MID-
CENTURY INSURANCE COMPANY,
FARMERS NEW WORLD LIFE
INSURANCE COMPANY, MID-CENTURY
INSURANCE COMPANY OF TEXAS,
TEXAS FARMERS INSURANCE
COMPANY, FARMERS TEXAS COUNTY
MUTUAL INSURANCE COMPANY,
FOREMOST INSURANCE COMPANY
GRAND RAPIDS, MICHIGAN,
FOREMOST COUNTY MUTUAL
INSURANCE COMPANY, and
FOREMOST LLOYDS OF TEXAS**